# MILLER v. SPELLER.

PATENTS; REDUCTION TO PRACTICE; MASTER AND SERVANT; DILIGENCE.

Where the junior party in interference conceived the invention three years
before the senior party, but did not attempt to reduce to practice un-
til he was assigned by their common employer to assist the senior
party, who was engaged, in a rolling mill of the employer, in perfect-
ing the invention which he in the meantime had conceived, it was
*held* that what the junior party then did was not of his own motion,
but through direction of the employer, and that he was lacking in
diligence when the senior party entered the field.

No. 695. Patent Appeals. Submitted January 17, 1911. Decided March
6, 1911.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Marshall A. Christy* and *Mr. James K. Bakewell* for
the appellant.

*Mr. Charles C. Linthicum* and *Mr. Charles McVeagh* for
the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

This is an interference proceeding relating to an improve-
ment in a process of rolling steel, and to the product of the
same. Briefly stated, it consists in forming upon a heated
steel plate or blank a number of closely adjacent projections,
and while the metal is still hot, rolling these projections into
the body of the metal so that they will form a smooth surface.

This produces a skin or layer of metal on the surface of the blank, which is more dense and compact than the body thereof, and able therefore to resist corrosion to a greater degree than the same metal rolled by the ordinary process. The subject-matter of the issue, embracing both process and product, is embodied in the following counts:

"1. As a new article of manufacture, a body of metal having an exterior skin composed of particles compressed in the plane of the surface of the metal, and characterized by its greater density as compared with that of the body of the metal beneath.

"2. As a new article of manufacture, a wrought metal article having a body portion of ordinary wrought character, and having an outer shell portion integral therewith, the shell portion having a portion of substantially uniform density and homogeneity, of substantial depth, of a greater density than the body portion, and of the same chemical constituents, and in substantially the same proportions, as the body portion.

"3. The method of increasing the surface density of a body of metal by first forming on such body chilled projections of such height and of such proximity that, when compressed into parallelism with the general surface of the blank, a continuous compression of the skin will be produced, and then before the chilling effect disappears, and while the body of the metal is hot, reducing the area of this skin by compressing the projections into parallelism with the general surface of the blank.

"4. The method of treating metal which consists in subjecting a heated blank to the action of die element, thereby forming on the blank adjacent projecting portions, and then compressing the projecting portions into a skin having a surface parallel with the general surface of the blank, by applying pressure simultaneously and equally to a plurality of said projecting portions without reheating and while the body of the metal is still hot, said projecting portions being of such height, shape, and distance apart that the particles of the projections under pressure will spread laterally, and mutually crowd the particles of the adjoining ones.

"5. The method of treating metal which consists in taking a hot metal blank having a plurality of closely arranged projections thereon, compressing said projections into a skin having a surface parallel with the general surface of the blank by applying rolling pressure simultaneously and equally to a plurality of adjoining projections, the projections being of such height, shape, and distance apart that the particles of the projections under pressure will spread laterally, and mutually crowd the particles of the adjoining ones.

"6. The method of improving metal which consists in subjecting a heated blank to the action of rolling instrumentalities, thereby forming projections on said blank, and then compressing the projections into a skin having a surface parallel with the general surface of the blank, while the body of the metal is still hot, by applying rolling pressure simultaneously and equally to a plurality of the projections, the projections being of such a height, shape, and distance apart that the particles of the projections under pressure will spread laterally, and mutually crowd the particles of the adjoining ones.

"7. The method of treating metal which consists in die forming on a hot plastic metal blank, a plurality of wedge-shaped projections arranged in proximity, adjoining projections having their opposing base lines substantially parallel, and then, without reheating and while the body of the blank is still hot, compressing said projections into a skin having a surface parallel with the general surface of the blank, by applying pressure simultaneously and equally to a number of adjoining projections."

Frank N. Speller was the first to file application for the patent, entering the Office May 29th, 1906. Harry D. Miller filed July 5th, 1906. Miller alleges conception, disclosure, and drawings on July 1st, 1902; reduction to practice last of August, 1905. Speller alleges conception, disclosure, and drawings April, 1905; reduction to practice July or August, 1905.

The Examiner of Interferences found that Miller had not conceived the invention, but that Speller had, as alleged, and

awarded priority to the latter. The Examiner-in-Chief affirmed this decision. They found that Speller has not acquired his knowledge of the invention from Miller, and was therefore an original inventor. Without expressly passing upon Miller's evidence of prior conception, they decided that, assuming such priority, he had lost any right that he had by want of proper diligence. On further appeal, the Commissioner, expressing the opinion that Miller had failed to establish conception prior to Speller, and had not disclosed the invention to him, awarded priority to Speller. Being the junior applicant, Miller had the burden of proof.

The questions to which the evidence was directed are: 1. Did Miller conceive the invention as alleged? 2. Did he communicate the invention to Speller? 3. If Speller is an original, but later, inventor, was Miller exercising diligence when Speller entered the field?

An enormous volume of evidence has been taken, particularly on the first two points. This has been reviewed at length in the several decisions of the Patent Office tribunals. After a careful consideration of all the evidence in the light of the able arguments of counsel, both oral and printed, we shall content ourselves with a statement of the conclusions reached.

While the claim of Miller to conception of the invention in July, 1902, is a remarkable one in some respects, it is nevertheless supported by strong testimony. Without determining this question, we may assume that the earlier invention has been established, and pass to the question whether Speller derived his conception of the invention from Miller. The latter has failed to establish this fact. The evidence is strong and conclusive that Speller was working on experiments which led to the invention some time, at least, before he came in contact with Miller.

Miller's testimony that he communicated the inventive idea to Speller is without substantial corroboration. Speller's testimony on the other hand that he had conceived the invention and was engaged in perfecting it in the rolling mill of the National Tube Company, the common employer of both parties

at the time, when Miller was selected to assist him, is very strongly corroborated. This evidence is overwhelming, and is not to be rejected because it comes from employees of the National Tube Company, which owns the invention, or because of some discrepancies in the matter of dates and minor details. These latter are no greater than usual in such cases.

Having found that Speller is an original inventor, and still assuming that Miller conceived the invention in July, 1902, the question remains: Was Miller using reasonable diligence when Speller entered the field? It is quite clear that he was not. The reduction to practice that Miller claims is that which took place in the rolling mill in carrying out Speller's directions with Miller's assistance. What Miller did then was not of his own motion, but through direction of the common employer. Prior to that time, he had done nothing whatever to perfect his invention, or to give information of it to the public; and no reason deserving consideration is given for his inaction.

The award of priority to Speller was rightly made, and will be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents.                *Affirmed.*